UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

POLYGON NORTHWEST COMPANY, LLC, *et al.*,

    Plaintiffs,

v.

STEADFAST INSURANCE COMPANY,

    Defendant.

No. C08-1294RSL

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on "Plaintiffs' Motion for Partial Summary Judgment Re SIR Stacking," Dkt. #36, and "Defendant's Cross-Motion for Partial Summary Judgment Re SIR," Dkt. #48. The parties dispute the number of self insured retention ("SIR") payments that apply to a single construction occurrence spanning multiple policy periods. While plaintiffs contend that Steadfast policies specifically promised that they would never need to pay more than a $1 million SIR on any one claim, defendant maintains that the policy language clearly

states that plaintiffs are responsible for a new SIR for each annual period. For the reasons set forth below, the Court denies plaintiffs' motion for partial summary judgment and grants defendant's cross-motion.[1]

## II. DISCUSSION

**A. Background**

Plaintiffs Polygon Northwest Company, LLC and others (collectively, "Polygon") are home builders in the Pacific Northwest. Between 2002 and 2008, Polygon bought Home Builders Protective ("HBP") policies from Zurich North America through defendant Steadfast Insurance Company ("Steadfast"). The HBP program is targeted toward developers who build large, multi-home residential developments. Initially, each policy was in effect for a one-year period, see, e.g., Dkt. #37, Ex.1, but beginning in 2005, Polygon signed on for two-year policy periods, see, e.g., Dkt. #37, Ex. 3.

Each Steadfast policy provides five different coverage parts: Coverage A provides bodily injury and property damage coverage; Coverage B provides personal injury and advertising injury coverage; Coverage C provides homebuilders limited warranty coverage; Coverage D provides construction damage liability coverage; and Coverage E provides fungus-related medical payments. The claims at issue in this case fall under Coverage D. The scope of Coverage D is limited to "those sums that the insured becomes legally obligated to pay as damages because of 'property damage' to 'your work.'" Dkt. #43, Ex. 1 at 18. According to each policy,

This insurance applies to "property damage" only if:

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, defendants' request for oral argument is denied.

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

1) The "property damage" is caused by a "construction occurrence" that takes place in the "coverage territory"; and

2) The "property damage" is to "your work" that you sell, give away or otherwise transfer title to during the policy period.

Id.

One feature of the HBP program is that instead of a traditional deductible, it imposes a substantial self insured retention ("SIR") on the insureds. Item 4 of the Declarations page of each HBP policy at issue requires Polygon to pay a $1 million SIR for "Each Occurrence\ Construction Occurrence\ Offense," see, e.g., Dkt. #37, Ex. 1. Steadfast's obligation to pay covered damages, repair costs, or litigation expenses applies only to amounts in excess of the $1 million SIR. Dkt. #43, Ex. 1 at 23, 31. Each policy provides that "[t]he Each Occurrence/ Construction Occurrence/ Offense amount shown under Item 4. **Self Insured Retention** of the **Declarations** page is the most you will pay for all 'self insured retention' amounts arising out of any one 'occurrence'/ 'construction occurrence' or offense." Id. at 23 (emphasis in original). Each policy further provides that "[t]he 'self insured retention' amounts of this Coverage Part apply separately to each consecutive annual period[.]" Id.

The parties now seek partial summary judgment on whether Polygon must pay one SIR or multiple SIR amounts on a claim arising out of single construction occurrence that spans multiple policy years.

**B. Analysis**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When

considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). When parties file cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Fair Housing Council of Riverside County v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)).

"Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." Overton v. Consol. Ins. Co., 145 Wn.2d 417, 424 (2002); see also Summers v. Great Southern Life Ins. Co., 130 Wn.App. 209, 213 (2005), review denied, 157 Wn.2d 1025 (2006) ("An interpretation is not reasonable if it . . . fails to give meaning to every term in a policy provision."). "If the language in an insurance contract is clear and unambiguous, the Court must enforce it as written and may not modify the contract or create ambiguity where none exists." Hess v. North Pacific Ins. Co., 122 Wn.2d 180, 186 (1993). "Complexity or the necessity to interrelate policy provisions does not alone render a policy ambiguous." Id. If an insurance policy is ambiguous, the court may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity, and any remaining ambiguity is resolved in favor of the insured. Quadrant Corp. v. American States Ins. Co., 154 Wn.2d 165, 171-72 (2005).

The Court finds that the plain language of the insurance policy applies multiple SIRs to a claim spanning multiple policy periods. First, the Declarations page of each insurance policy clearly defines the temporal scope of the policy. See, e.g., Dkt. #43, Ex. 1. at 1 (policy effective

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4

from 06-01-2003 to 06-01-2004). Within that policy period, the SIR for "Each Occurrence \ Construction Occurrence \ Offense" is $1 million. Id. Thus, the very first page of the policy indicates that, for a specific amount of time, the insured is buying a specific amount of coverage and is responsible for a specific amount of SIR.

The policy provisions themselves further limit SIR applicability. In Section IV explaining SIR obligations, the policy first echoes the information reflected on the Declarations page: "The Each Occurrence/Construction Occurrence/Offense Amount shown under Item 4. **Self Insured Retention** of the **Declarations** page is the most you will pay for all 'self insured retention' amounts arising out of any one 'occurrence'/'construction occurrence' or offense." Dkt. #43, Ex. 1 at 23 (emphasis in original). The policy then clearly states that "[t]he 'self insured retention' amounts of this Coverage Part apply separately to each consecutive annual period[.]" Id. Therefore, in situations where the policy period spans multiple years, see, e.g., Dkt. #37, Ex. 3, each SIR amount applies only on an annual basis.

The SIR provision mirrors the Limits provision in this regard. Under Section III regarding the Limits of Insurance, the policy provides that covered losses that trigger multiple coverage parts "are to be deemed a single 'occurrence'/'construction occurrence', subject to the Each Occurrence/Construction Occurrence Limit shown on the Declarations page of the policy." Dkt. #43, Ex. 1 at 23. The policy goes on to explain that "[t]he Limits of Insurance of this Coverage Part apply separately to each consecutive annual period[.]" Id. Thus, if a particular claim spans multiple policy years, multiple policy limits will apply. This is obviously to the benefit of the insured. So as to balance the potential application of multiple limits, however, the policy requires that a new SIR applies to the claim each year. In order to access coverage for a particular claim in a particular year, the insured must meet its deductible-equivalent for that

claim and year.

Moreover, the language of the insurance agreement specifically limits Coverage D to (1) property damage caused by a construction occurrence and (2) property damage to Polygon's work that it "sell[s], give[s] away or otherwise transfer[s] title to during the policy period." Id. at 18. The scope of coverage refers directly to sales made during the policy period. Any SIR amounts, of course, apply only to claims that fall within that scope of coverage.[2] Therefore, the policy as a whole lays out clear temporal boundaries for coverage, insurance limits, and SIR applicability.

Polygon's attempt to find ambiguity in the policy is unavailing.[3] Polygon's focus on a single sentence in the policy ignores the context of the policy as a whole. Polygon emphasizes the language stating that "the most you will pay for all 'self insured retention' amounts arising out of any one 'occurrence'/'construction occurrence' or offense" is the $1 million SIR shown on the Declarations page. Taken out of context, this provision can be read to mean that a $1 million SIR is the most the insured will ever pay on a given claim. But a contextualized reading of the policy clearly indicates that the $1 million SIR applies on an annual basis. Moreover, nothing in the policy can reasonably be read to extend beyond the effective policy dates. To the extent that the policy speaks in superlatives, it is necessarily limited by the policy period covered

---

[2] Polygon itself recognizes that "if a claim from a single Construction Occurrence includes property damage to homes sold in different policy years, the claim could trigger coverage under multiple HBP policies." Dkt. #36 at 7. Once a new HBP policy is triggered, the coverage limits and SIR obligations under that policy go into effect.

[3] Because the Court finds no ambiguity in the policy language, it does not consider any extrinsic evidence of the parties' intent. See Washington Pub. Util. Districts' Utilities Sys. v. Pub. Util. Dist. No. 1 of Clallam County, 112 Wn.2d 1, 17 (1989) ("Extrinsic evidence offered to alter and interpret the terms of an unambiguous contract is inadmissible.").

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6

in the agreement.

Polygon insists that its emphasis on that one provision does not ignore the subsequent provision that SIR amounts "apply separately to each consecutive annual period[.]" See Dkt. #45 at 8. According to Polygon, "[t]hat clause has an obvious purpose[:] . . . In order that Steadfast's HBP form not be ambiguous when sold for any policy period other than a single year, Steadfast needed a clause stating whether the limits stated on the Declaration page apply for the entire policy period, or instead apply to each year . . . within the policy period." Id. at 8-9. Polygon's attempt to explain away the language only reinforces the Court's interpretation. The policy provision limiting application of each SIR to a single year states that the limits on the Declarations page "appl[y] for each annual period, not for a single multi-year period," id. at 9, and not indefinitely, as Polygon's interpretation would suggest.

Nor does the fact that the policy considers ongoing damage to constitute a single "construction occurrence" suggest that one SIR applies to several policy periods. The policy provides that a "construction occurrence" means "an accident including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. #43, Ex. 1 at 27. Polygon concludes from this definition that ongoing water damage "is defined as a single 'Construction Occurrence' even when it spans multiple policy years." Dkt. #36 at 5. However, coverage for ongoing damage does not translate to indefinite coverage. Rather, the policy states that, within the policy period, continuous exposure to the same harmful conditions will constitute a single "construction occurrence" for purposes of insurance coverage and SIR obligations. Moreover, according to the policy, construction occurrences that affect more than one house shall be deemed to constitute a single "construction occurrence" if all homes are in the same subdivision, were constructed in accordance with the same set of plans, and have been affected by the same

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7

1 | construction defect. Dkt. #43, Ex. 1 at 27-28. Just because the insurance policy broadly defines
2 | a "construction occurrence" to include ongoing damage and damage to multiple homes, these
3 | provisions give no indication that they are meant to exceed the policy period covered by the
4 | insurance agreement. While the term "construction occurrence" is inclusive, the temporal scope
5 | of the policy is clearly limited.

In its reply brief and response brief, Polygon moves from its textual argument to a new argument premised on the nature of condominium ownership. According to Polygon, because an undivided interest in the common elements of a condominium building necessarily conveys with the sale of each unit, a single SIR may apply across multiple policy periods. But this argument fails for several reasons. First, Polygon's emphasis on the two-step process used to determine coverage is misplaced. To establish coverage, "[t]he insured must show the loss falls within the scope of the policy's insured losses. To avoid coverage, the insurer must then show the loss is excluded by specific policy language." McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 731 (1992). Polygon criticizes that "Steadfast grounds its argument neither in the Coverage D insuring promise nor in any particular exclusionary language." Dkt. #49 at 5; see also id. at 10 (emphasizing defendant's burden of showing that the claims are excluded by specific policy language); id. at 14 ("Steadfast can point to no exclusion denying full coverage for damage to common elements when one or more units are sold during the policy period."). However, Steadfast makes no claim that the common elements are excluded by the policy language. Instead, Steadfast rightly contends that the covered damage is subject to a new SIR for each policy period. After all, the SIR only applies to covered amounts.

Second, Washington case law indicates that a reasonable basis exists for allocating property damage across the HBP policy periods based on unit sales. To the extent Polygon

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8

argues that all of the common elements in all of the condominium buildings were sold along with the first unit of the condominium project, it is mistaken. In State Farm Fire & Casualty Co. v. English Cove Ass'n, Inc., 121 Wn.App. 358 (2004), the Washington Court of Appeals recognized that common elements are sold over time in conjunction with the associated units. See 121 Wn.App. at 368 ("The condominium owner owns and must convey at sale both the unit and the common elements, notwithstanding the latter is held as an undivided interest."). English Cove rejected Polygon's all-or-nothing approach to the sale and ownership of common elements and held that "at least one reasonable means" exists to allocate loss – "the ratio of [the insured's] ownership of the common elements to total ownership of those elements[.]" Id. at 371. Moreover, English Cove's holding did "not exclude the possibility there may be other reasonable means for allocation." Id. Where, as here, the insurance policy provides a clear basis for allocation – unit sales dates – the Court rejects Polygon's suggestion that any damage to the common elements cannot be allocated across individual homes and individual policies.

Nor does Bordeaux, Inc. v. American Safety Ins. Co., 145 Wn.App. 687 (2008), advance Polygon's cause. Bordeaux held that a single SIR payment applies to damage concurrently covered under two policies. Here, by contrast, the property damage associated with Polygon's work in one policy period is not concurrently covered by a policy issued for another policy period. Moreover, while the policy at issue in Bordeaux "sa[id] nothing about whether or not Bordeaux's obligation to pay the American Safety SIR is satisfied when it fulfills a similar obligation under another policy," id. at 698, here the insurance policy states that each SIR amount "appl[ies] separately to each consecutive annual period," Dkt. #43, Ex. 1 at 23.

Third, Polygon's attempt to establish that "Steadfast's policy interpretation would mean that the more HBP insurance plaintiffs bought, the less coverage they would receive," Dkt. #49

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9

at 14, is fundamentally flawed. According to Polygon's hypothetical, on a condominium project with unit sales spanning three years, if it bought an HBP policy for just one year it would have full Coverage D liability protection against a claim for damage to the common elements for all three years up to the $10 million limit and would only have to pay one SIR, whereas buying three consecutive policies with three different SIRs would afford it less indemnity coverage. Id. at 14-15. However, Polygon's hypothetical wrongly assumes that coverage would automatically extend beyond a given policy period. In fact, under the first scenario, the insured would receive no coverage whatsoever for damages to the units and associated common elements sold in the second and third years. Essentially, Polygon argues that under its interpretation of the policy, it would receive more money from Steadfast for the property damage to its buildings. However, both the text of the insurance policy and Washington case law regarding condominium ownership demonstrate that Polygon's interpretation of the policy is unreasonable.

### III. CONCLUSION

For all of the foregoing reasons, "Plaintiffs' Motion for Partial Summary Judgment Re SIR Stacking" (Dkt. #36) is DENIED and "Defendant's Cross-Motion for Partial Summary Judgment Re SIR" (Dkt. #48) is GRANTED.

1    DATED this 10th day of August, 2009.

                                            _____
                                            Robert S. Lasnik
                                            United States District Judge

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11